350

[Crim. No. 9495.   Second Dist., Div. Four.   Nov. 23, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM
THOMAS GRAVES, Defendant and Appellant.

William Thomas Graves, in pro. per., and Marguerite C.
Geftakys, under appointment by the District Court of Appeal,
for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General,
William E. James, Assistant Attorney General, and Gilbert
F. Nelson, Deputy Attorney General, for Plaintiff and Re-
spondent.

JEFFERSON, J.—Defendant was convicted by the court
of two counts of burglary. One count charged that he bur-
glarized the residence of Bertha Ross on or about May 3, 1962;
the other count alleged the burglary of the Al-Ray Manufac-
turing Company on or about May 11, 1962. On appeal this
court affirmed the judgment in an opinion filed on July 27,
1964, and certified for nonpublication in the official reports
pursuant to California Rules of Court, rule 976. Subse-
quently, the Supreme Court of California granted a hearing

and retransferred the case to this court for further consideration in the light of the recent decision of the United States Supreme Court in *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977].

In *Escobedo,* which was decided on June 22, 1964, subsequent to the date of the trial herein, it was established that an accused has a right to counsel at the pre-arraignment accusatory stage of the proceedings and that statements obtained in violation of this right must be excluded. Following *Escobedo,* our Supreme Court held in *People* v. *Dorado,* 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361], ". . . that defendant's confession could not properly be introduced into evidence because (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or his absolute right to remain silent, and no evidence establishes that he had waived these rights."

■ In the instant case evidence was introduced of defendant's confession that he broke into the residence of Bertha Ross on May 3, 1962, and took certain items including blank checks with her name and address printed on them; and of his confession that, on May 11, 1962, he burglarized the Al-Ray Manufacturing Company, taking several of the company's blank checks.

Concerning these confessions, Officer Hovard testified that he was an investigator for the Pasadena Police Department. On March 3, 1963, at approximately 1 p.m., he had a conversation with defendant in the Lincoln Heights jail. One other police investigator was present during this conversation. Initially, Officer Hovard told defendant that he had found an envelope containing defendant's identification and some checks belonging to Bertha Ross and to the Al-Ray Manufacturing Company, in the possession of a person named Charles Cook. The officer then told defendant that Cook had said that he had obtained these items from defendant; that he and defendant were in a car together on May 17, 1962; and that defendant had left the envelope containing the checks in this car. Officer Hovard further testified that he then asked defendant if he had burglarized the Al-Ray Manufacturing Company; that defendant replied, "Yes." The officer then

asked defendant how he entered the building, and defendant said that he broke a rear window with a rock, entered and took some checks. Defendant was then asked if he had broken into the home of Bertha Ross, and he answered ''Yes.'' The officer asked him if anyone was with him at the time, and defendant said ''No.'' When asked how he secured admittance to the house, defendant said that he ripped a rear screen; that he then took some checks and identification cards. In response to further questioning defendant said that he had not passed any of the checks but that he planned on doing so. The officer then asked defendant why he ran from the rear of his house when the officer approached the front door, and defendant replied that he was scared. When asked where he went after he ran from the officer, defendant said he went to Sacramento and stayed there until he finally decided to come back to Los Angeles.

Prior to his conversation with defendant on March 3, 1963, Officer Hovard related that he had observed defendant on one other occasion. On May 17, 1962, he saw defendant, (apparently in the vicinity of a Pasadena apartment where defendant was living) ; he shouted ''Halt'' but defendant climbed over a large fence and disappeared. The officer had come to defendant's apartment looking for defendant. (The record does not disclose the information which caused the officer to go to this address in search of defendant.) Charles Cook was arrested by the officer at approximately 11 a.m. on the same date when the latter walked up to the same apartment. At this time it was discovered that Cook was carrying the envelope which contained the checks stolen from the Al-Ray Company and from Miss Ross. He also had in his possession a number of letters addressed to defendant. Cook told the officer he was living in the apartment with defendant.

Defendant's testimony consisted in the denial of any implication in the crimes charged and the further denial that he made any of the statements alluded to by the officer.

Because the case was tried prior to the *Escobedo* and *Dorado* decisions the record before this court quite understandably fails to probe in depth into questions posed by the new rule. However, it is clear that defendant was in custody at the time of the questioning. Further, while the record does not reveal why the police were ''looking for'' defendant when they went to his apartment, it is apparent that it was in connection with the two burglaries committed a few days before. Defendant's subsequent flight from the officers, cou-

pled with the discovery of the stolen checks and the letters addressed to defendant, in the possession of the person arrested entering defendant's apartment—who said he lived with defendant and that defendant had left the checks and the letters in a car in which they were riding — clearly focused suspicion on defendant.

In regard to the issue as to whether there was a process of interrogation which tended to elicit incriminating statements, we find a number of unanswered questions in the record. We do not know how long defendant was in custody prior to the questioning; whether this was the first time he was questioned; how long he was questioned. We do know that he was not questioned in an interrogation room but in the kitchen area of the jail. The Attorney General ascribes particular significance to this fact. It is argued that such an area would not have been selected had the officers been seeking to overbear the will of defendant or to coerce any statements from him. But the officer also testified that he had talked to two people at Lincoln Heights jail prior to talking to defendant, and that both conversations occurred in the kitchen area. The officer further stated that he did not know whether Lincoln Heights in fact had any interrogation room facilities, adding, that he did not think such facilities, if they existed, would have been "any better than where we actually were at the time." It is evident that the questions asked by the officers which preceded defendant's incriminating responses clearly were designed to elicit such responses. Under the circumstances presented we must conclude that defendant was exposed to a process of interrogation that lent itself to eliciting incriminating statements. As the court said in *People* v. *Stewart*, 62 Cal.2d 571, 578 [43 Cal.Rptr. 201, 40 P.2d 97], ". . . in most cases the process of interrogations following an arrest will so lend itself. . . ."

Since the record fails to show that prior to his confessions defendant was advised of his rights to counsel and to remain silent, or that he otherwise waived these rights, a reversal of the judgment is required. (*People* v. *Dorado, supra,* 62 Cal. 2d 338.)

The judgment of conviction is reversed.

Files, P. J., and Kingsley, J., concurred.